**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| JULIUS VEAL, | ) | |
|         Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1844-RLY-TAB |
| | ) | |
| MICHAEL CHERTOFF, SECRETARY, | ) | |
| DEPARTMENT OF HOMELAND SECURITY, | ) | |
| (TRANSPORTATION SECURITY | ) | |
| ADMINISTRATION), | ) | |
| | ) | |
|         Defendant. | ) | |

**Entry Discussing Cross-Motions for Summary Judgment**
**and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the plaintiff's motion for summary judgment must be **denied** and the defendant's motion for summary judgment must be **granted.**

**I. Background**

As used in this Entry, "Veal" refers to the plaintiff, Julius Veal, and "TSA" refers to the defendant, Transportation Security Administration.

Veal applied for a job with the TSA in 2003, but was not hired. He alleges in this action that he was discriminated against on the basis of his race, gender and age. He alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* and the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621, *et seq*. Both parties seek resolution of Veal's claims through the entry of summary judgment.

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

## II.  Discussion

### A.  Findings of Fact

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the motion for summary judgment.

Following the terrorist attacks of September 11, 2001, Congress passed the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, and created the TSA to protect our nation's civil air transportation system. Section 110 of the ATSA mandates that TSA recruit and hire federal employees to provide security screening of passengers and baggage at the nation's commercial airports. Specific duties for the security screeners include providing frontline security and protection of air travelers, airports and airplanes, and they are responsible for identifying dangerous objects in baggage, cargo and on passengers and preventing those objects from being transported onto aircraft.

To meet the ATSA's requirements, the TSA created an accelerated hiring process of security screening personnel. The ATSA required these personnel to meet specific qualifications and standards, including a satisfactory or better score on a federal security screening personnel selection examination. Qualifications for the position require basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination, physical strength, motor skills, and orthopedic capacity, all in relation to the essential tasks of being able to search, handle, lift, and carry baggage. To ensure that candidates met these qualifications, a multi-tiered application and standardized testing assessment was developed.

The testing assessments were designed to meet the qualifications and standards for hiring screeners as required by the ATSA, and were divided into two phases. Phase I consists of a battery of standardized, computer-based tests. Phase II consists of a structured interview, physical tests, and a medical evaluation. Applicants who pass both Phases I and II proceed to the last phase of the hiring process, a pre-employment background investigation security check.

The Phase I standardized, computer-based battery is composed of three main segments: (1) Screener English Test ("SET"); (2) Screener Object Recognition Test ("SORT"); and (3) Aviation Security Screener Employment Test ("ASSET"); which in turn is composed of three separately scored scales: 1) validity; 2) adjustment; and 3) prudence. Candidates are required to pass each segment of Phase I before continuing to Phase II.

The SORT test measures aptitude in x-ray image detection and assesses the aptitude for visually identifying images by detecting everyday objects in x-ray images of luggage. The ability of security screeners to interpret x-ray images is critical to the safety and security of the civil air transportation system. The SORT test is timed, scripted, and standardized for all applicants, and all applicants complete the test in the same manner.

SORT is a pass/fail test with minimum passing scores. It is delivered and scored via computer. Applicants who fail SORT are disqualified from consideration for a security screener position.

The ASSET test is also computer-based and tests for the critical interpersonal skills required for the demanding security screener position. This test is also pass/fail and delivered and remotely scored by computer. Candidates have one chance to take the Phase 1 computer-based tests. Those who fail are disqualified, but can re-test for a position after six months if a vacancy is available. To facilitate hiring, the TSA contracted with certain organizations to administer these screener assessments. In 2003, CPS Human Resource Services ("CPS") was awarded the contract.

In 2003, Veal applied via the Internet for a number of positions as a Transportation Security Screener. He is African American/Native American and was approximately 45 years old at the time. Veal was scheduled to take the Phase I exam on February 25, 2004, at Cuyahoga Community College in Cleveland, Ohio.

On February 25, 2004, Veal reported for his Phase I testing at the ACT Center, which was part of the college. Another man also reported for testing. After both men had arrived, the test proctor introduced herself and asked the other man to follow her to begin the testing process. Within five or six minutes, the proctor returned for Veal.

The proctor asked Veal for two forms of identification, which he provided. She gave him two documents to review and complete, i.e., an "ACT Examinee Informed Consent" and a "Sensitive Security Information, Non-Disclosure Statement for Candidates." Veal read and signed the Non-Disclosure Statement, agreeing to maintain the confidentiality of the questions and answers and not remove any written, printed, or recorded materials pertaining to the examination. After reading the Informed Consent form, Veal signed and consented to allowing the ACT Center to continuously monitor him during his test session and to audio and videotape his test session. The proctor also told Veal that she needed to take his picture, gesturing to a web camera. Veal consented to having his picture taken. The photograph was part of the ACT Center's requirements, and was not required by TSA or CPS.

Veal took the three Phase I computer-based tests in about two hours. In answering the standardized test questions, Veal was not asked his age, race, or gender. When he had completed the tests, Veal told the proctor he was done. Veal was given a document entitled "Sensitive Security Information Non-Disclosure Statement for Candidates." The ACT Center and the proctor were not privy to Veal's scores or his TSA job application status.

Veal's test results were delivered and remotely scored by computer. Veal failed both the SORT and ASSET tests. The photograph or digital image taken by the ACT Center was not supplied to TSA or CPS as part of Veal's record nor was the photograph forwarded with his test results. Neither TSA nor CPS matched Veal's photograph with the results of his assessments.

After leaving the ACT Center, Veal telephoned customer service and was informed that he had failed Phase I. Veal was encouraged to reapply in six months.

Six months later, Veal applied for a security screener position at the Philadelphia Airport. In September 2004, Veal took the Phase I testing again at the ACT Center. As before, the proctor (a different one) took Veal's photograph. Now more familiar with the tests, Veal passed Phase I and proceeded on to Phase II. Unfortunately, Veal was unable to successfully complete Phase II.

### B. Conclusions of Law

Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against individuals on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The protected class is employees forty years of age and over. *Id.* at § 631.

"It is well-established that a plaintiff in a Title VII case may proceed under a direct or indirect method of proof." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004); *see also Stone v. City of Indianapolis Public Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997). The direct evidence must show that the defendant said or did something indicating discriminatory animus with regard to the specific employment decision in question. *Id.* In short, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers,* 320 F.3d at 753 (internal quotation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Ill. Dept. of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)). "That circumstantial evidence, however, 'must point directly to a discriminatory reason for the employer's action.'" *Id.* (quoting *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003)).

Under the alternative method, in *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). The test consists of three steps. First, the plaintiff must establish a *prima facie* case of discrimination. Second, once the *prima facie* case is established, the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. Finally, if a legitimate, non-discriminatory reason is offered, the plaintiff must come forward with evidence to show that the stated reason is not the true one, but only a pretext for discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973);

4

*DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 401 (7th Cir. 1999).

Because Veal has not provided any direct evidence of discrimination on the basis of race, gender or age, he must proceed under the burden-shifting test established in *McDonnell Douglas. Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). The elements of a *prima facie* case of discrimination in a failure-to-hire case are that: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which TSA was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and TSA continued to seek applicants from persons of Veal's qualifications, or filled the position with a person not in Veal's protected class. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir.2002).

Rather than produce evidence establishing each element of his *prima facie* case, Veal argues that the selection procedure was illegal because taking his photograph during the process was not related to skills assessment and constituted unlawful profiling. He argues that there was no valid reason for requiring that a digital photo be taken of him if it was not to be used in the selection process. He contends that the selection process techniques, *i.e.,* taking a digital photograph, violated the EEOC's Uniform Guidelines on Employee Selection Procedures. *See* 29 C.F.R. § 1607. Although the EEOC has issued guidelines for validating procedures for the selection of employees, "the guidelines have never been promulgated as regulations, and do not have the force of law." *Aguilera v. Cook County Police and Corrections Merit Bd.*, 760 F.2d 844, 847 (7th Cir. 1985). The court need not consider at any greater depth whether any technical guideline violation occurred. Veal's position that the alleged violation of EEOC guidelines compels judgment in his favor is misplaced.

With respect to the elements of a *prima facie* case, the undisputed evidence shows that Veal was not qualified for the position for which he applied. He failed both of the SORT and ASSET tests in Phase I of the application process. Veal's suggestion that the test proctor had autonomy sufficient to "manipulate" the test results is baseless. Veal has failed to present any evidence which would create a genuine issue as to his qualification for the position, and therefore, he has failed to satisfy his burden under the first step of the *McDonnell Douglas* process.

Even if Veal had presented evidence sufficient to satisfy each of the elements of a *prima facie* case, TSA has articulated a legitimate non-discriminatory reason for not hiring him. To show pretext, Veal must come forward with evidence showing that the stated reason for him not being hired was not a true reason. Veal can demonstrate pretext by presenting evidence tending to show that the proferred reason was not worthy of belief because it was factually baseless, was not the actual motivation for the decision in question, or was insufficient to motivate the decision. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888-889 (7th Cir. 2001). "Pretext requires more than showing that the decision was mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Farrell v. Butler University*, 421 F.3d 609, 613 (7th Cir. 2005) (internal quotation omitted). Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681,

685 (7th Cir.2000). Veal took the tests as part of Phase I of the application process, and those tests were scored by computer the same day. Veal failed both the SORT and the ASSET tests, rendering him unqualified to proceed to Phase II of the application process. Veal argues that anyone looking at his picture would know his age, race and gender and that that information was somehow used to discriminate against him. There is no evidence that the photograph taken of Veal was connected in any way to the computer-scored tests, nor is there evidence that the photograph taken by the ACT Center proctor was forwarded to TSA or its contractor CPS.

Moreover, Veal does not challenge the fact that he provided two forms of identification to the test proctor nor does he argue that being videotaped during the test session provided information upon which he was discriminated against. Veal has no evidence that even if information concerning his race, age and gender was provided to the test-scoring computer, such information was somehow used to disqualify him for the position. Veal's theory upon which this lawsuit was brought lacks merit. He has presented nothing more than his own speculation as to any connection between the photograph and the denial of his employment. Indeed, when he returned six months later to re-take the tests, his photograph was taken again but he passed Phase I of the tests. There is simply no evidence suggesting that the photograph was used by TSA as a basis for making selection decisions. Veal's burden to set forth specific facts to show that a genuine issue exists cannot be met with conclusory statements or speculation, but only with appropriate citations to relevant admissible evidence. *See* Local Rule 56.1. "[A] plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 939 (7th Cir. 1997). In sum, Veal has not presented any evidence showing that TSA's reason for not hiring him was pretextual. Accordingly, TSA is entitled to summary judgment.

### III.  Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997) (internal quotation omitted). "Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993). Here, Veal has not come forward with evidence that establishes a *prima facie* case of discrimination, nor has he shown that TSA's proferred reason for its action was pretextual.

Accordingly, Veal's motion for summary judgment must be **denied** and TSA's motion for summary judgment must be **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: August 7, 2006

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana